Cardiff Coal Co. v. Edward N. Waybright, Adm'r.

1. PLEADING—*Variance Between Declaration and Proof.*—Proof
that a party injured in a mine proceeded to the shaft to give an order,
not by reason of any direction from the superintendent, will not sus-
tain a recovery on a declaration alleging that the superintendent gave
him the order to do what he did.

Trespass on the Case.—Death from negligent act. Appeal from the
Circuit Court of Livingston County; the Hon. JOHN H. MOFFETT, Judge
presiding. Heard in this court at the October term, 1902. Reversed
and remanded. Opinion filed April 21, 1903.

WILLIAM McNETT, JOHN W. BLEE and R. S. McILDUFF,
attorneys for appellant.

JOHN E. POLLOCK, A. C. NORTON and J. M. WEAKLY, attor-
neys for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of
the court.

This is a suit by the administrator of the estate of Mar-
tin Clausen, deceased, to recover damages for his death,
which occurred at the coal mine of appellant in Livingston
county, February 2, 1900. Clausen was an employe of appel-
lant, engaged in trimming cars as they were loaded with
coal from the mine, and performing other services as a
common laborer. The coal was brought from the mines
through a shaft by means of cages operated by steam. The
shaft comprised two compartments, a north and a south
one, and there was a cage in each shaft, one of which
ascended while the other descended. From the superstruc-
ture over the shaft, there was a chute running west, which
was used to load cars upon the railroad tracks beneath. This
chute was supplied with screens for the purpose of sorting
the coal into different sizes, as it was loaded upon the cars,
and was known as the railroad chute. On the east
there was also a chute used for loading wagons, known as
the farmer's chute. The coal, when mined, was placed in

cars, which, when brought up to the chutes in the cages, dumped their contents automatically. Each car was, however, provided with but one movable end, so that it had to be placed upon the cage in such a way that the movable end would be toward the chute into which it was desired to dump the load. Just before Clausen was injured, an accident occurred to one of the screens in the railroad chute, which made it necessary for all of them to be shut down until repairs could be made. When the screens were shut down, coal was ordered to be sent up from the bottom to be turned into the farmer's chute, which could be loaded only from the south cage, and the coal cars were so placed on the south cage that they would dump the coal to the east. While the repairs were being made, Parker, the superintendent of the mine, went over to a car under the railroad chute where Clausen and one Overly were working, and told Clausen there was complaint from customers that the coal shipped them was dirty; that he wanted it properly cleaned, and would hold Clausen responsible for that work. The screens having been repaired, Parker, according to the testimony of Overly, said to Clausen, "Now we are ready for coal on this side." This necessitated the giving of orders to the men below to change the position of the cars in the cages so that they would dump into the railroad chute. Parker and Clausen thereupon left the car and went toward the east, Parker going first. Clausen went directly to the shaft, opened the gate to the fence around it, stepped in and leaning over the south side of the shaft, called down to the men below. While so occupied the south cage descended rapidly, struck him, and inflicted injuries which caused his death. Parker at the time was about thirty-five feet from the shaft. Upon the trial of this case in the court below, there was a verdict and a judgment in favor of appellee for $4,000. Appellant assigns many errors, but the principal one is that the verdict is not sustained by the evidence.

The declaration originally consisted of five counts. Appellee, however, dismissed the first and second counts and the

court sustained a motion of appellant, made at the conclu-
sion of appellee's testimony, instructing the jury to find
the issues for appellant, on the fifth count.

The third count charges that Clausen was directed by
the superintendent in charge of the mine, to go to the
mouth of the shaft and call to the men working there to
change the car, so that it would come up loaded, and so
placed as to be dumped on the side desired; that Clausen
went to the mouth of the shaft and called down to the men
below; that while he was so doing, the defendant so neg-
ligently and carelessly managed the cages and machinery
of the company, that a cage was dropped upon Clausen
without any warning or signal having been given that the
cage was about to descend; that Clausen was struck with
great force and violence, and then and there killed.

The fourth count charged that it was the duty of appel-
lant to provide a signal for the purpose of changing the
car, which it neglected to do; that it wholly neglected to
provide a safe means of communication from the top to
the bottom of the shaft; that the only means provided by
defendant for such communication was to have one of its
employes stoop over the mouth of the shaft and call to
the men below to change the car; that Clausen, who was
in the employ of defendant, "went to the mouth of the
shaft (by the direction and order of one William Henry
Parker, the superintendent of said defendant), as he was
required by his duty to do, and called to the men below to
change the car," and while so doing was struck by the
cage; that Clausen was a new man at the business and had
not been properly instructed as to the danger attending
the operation of calling down the shaft.    It will be seen
that while there was a charge, in the third count, that appel-
lant so negligently and carelessly managed its cages and
machinery that the cage was dropped upon Clausen with-
out any warning, yet there is no charge that Clausen's
duties called him to the mouth of the shaft, and no reason
is shown why he should have been there, except that he
was ordered to go there by the superintendent.    The

charge in the fourth count that Clausen went to the mouth of the shaft, by the direction and order of the ·superintendent, "as he was required by his duty to do," apparently bases the duty to go to the shaft, wholly upon the order of the superintendent. The whole theory of the declaration was that Clausen went to the mouth of the shaft by the direction of Parker. The court evidently adopted that theory, and its instructions to the jury were given in accordance therewith.

The jury also found specially in answer to an interrogatory submitted to them, that appellant was guilty of negligence, causing or contributing to the death of Clausen, based on an order or direction, given by superintendent Parker to Clausen, on the day of and prior to. the accident. Counsel for appellee in their argument say, in speaking of Clausen's action in going to the mouth of the shaft, " the question of whether or not Clausen was ordered to do his duty, from all the circumstances proven in the case, was submitted to the jury, and counsel for appellee in their argument before the jury, explicitly said to the jury, that unless they believed from the evidence that Clausen was ordered by the superintendent to do this work, they should find for the defendant. We took that position there, and we are willing to stand by it in this court. If there was no order proven, we have no case. If there was an order proven, the appellant has no case." There was, indeed, some evidence tending to show that Clausen was following a custom existing at the mine, in calling down the shaft to the men below to change the cages, and that this custom was so general as to charge those engaged in the operation of the cars with notice thereof; but the direct charge in the declaration, and the theory relied upon by court and the counsel for appellee on the trial of the cause, was that Parker gave Clausen the order to go to the mouth of the shaft, and the jury found that such order was given. If, therefore, the judgment in this case is sustained, it must be upon the ground that Parker gave Clausen the order in question. There

was no direct proof in the evidence that Parker gave Clausen such an order, and appellee relied entirely upon circumstantial evidence to establish such fact. Parker swore that he did not say "Now we are ready for coal on this side," at the time the screens were repaired, as testified to by the witness Overly, but even if he had, it can hardly be said that the same was proof of an order to Clausen to call down the shaft. Parker was the only living witness to that conversation, if any occurred between him and Clausen from the time they left the car until Clausen met his death, and he positively denies that he ordered Clausen to go to the shaft and call down to the men below. We are of opinion that the proof failed to show that Clausen was directed by Parker to call down the shaft. The inference most favorable to appellee, that could be drawn from the proof, is, that Clausen proceeded to the shaft to give the order, not by reason of any direction from Parker, but in accordance with a custom prevailing at the mine. Under the declaration as framed, however, such proof would not justify a recovery.

The judgment of the court below is accordingly reversed and the cause remanded.